IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No. 4:20-cv-00394 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD ALAN COMER; | ) | |
| JENNIFER LYN BURGOIN-COMER; | ) | |
| STATE SAVINGS BANK; | ) | |
| CARLSON SEED, INC., | ) | |
| STATE OF IOWA-DEPARTMENT | ) | |
| OF REVENUE | ) | |
| | ) | |
| Defendants. | | |

## **COMPLAINT**

COMES NOW the Plaintiff, United States of America, for its agencies Farm Service

Agency (FSA), United States Department of Agriculture (USDA), and Internal Revenue Service

(IRS) by and through Marc Krickbaum, United States Attorney for the Southern District of Iowa,

and Kristin E. Olson, Assistant United States Attorney for this District, and for its cause of action

alleges:

1. This is a civil action brought by the United States of America under the provisions of

   28 U.S.C. § 1345.

2. The following Defendants may be served as follows:

   a. The Defendant, **Donald Alan Comer**, may be served by delivering a copy of

      the summons and complaint to him in Taylor County, Iowa, within the

      jurisdiction of this Court.

    b.  The Defendant, **Jennifer Lyn Burgoin-Comer**, may be served by delivering a copy of the summons and complaint to her in Taylor County, Iowa within the jurisdiction of this Court.

    c.  The Defendant, **State Savings Bank**, may be served by delivering a copy of the summons and complaint to its President, Tad D. Hammond, at 602 Sheldon Avenue, P.O. Box 635, Creston, IA., 50801-3322, within the jurisdiction of this court.

    d.  The Defendant, **Carlson Seed Inc.**, may be served by delivering a copy of the summons and complaint to its Registered Agent, Terry L. Carlson, with an address of 1978 310th St., Blanchard, Iowa, 51630, within the jurisdiction of this court.

    e.  The Defendant, **State of Iowa-Department of Revenue**, may be served by delivering a copy of the summons and complaint to its Director, Kraig Paulsen. Hoover St. Office Building, 1305 E. Walnut, Des Moines, Iowa, 50319, within the jurisdiction of this court.

3.  On or about June 5, 2006, the Defendants, Donald Alan Comer and Jennifer Lyn Burgoin-Comer (hereinafter the Defendants), executed and delivered to the Plaintiff, United States of America, acting through FSA, USDA (hereinafter Plaintiff), a promissory note whereby they promised to pay the Plaintiff the sum of $150,000.00 with interest thereon at 5.125 percent per annum.  As consideration for the note, the Plaintiff made a FSA loan [#41-02] to the Defendants pursuant to the Consolidated

Farm and Rural Development Act 7 U.S.C. § 1921, *et seq.*.  A true and correct copy

of the note for Loan #41-02 is attached as Exhibit A.

4.   At the same time and place and as part of the same transaction to secure the payment

on the note, the Defendants executed and delivered to the Plaintiff a purchase-money

security interest in the form of a real estate mortgage upon certain real estate in

Taylor County, Iowa, within the jurisdiction of this Court, to wit:

> The North Half of the Northwest Quarter (N ½ NW ¼) of Section Four (4),
> Township Sixty-seven (67) North, Range Thirty-five (35) West of the 5th P.M.,
> Taylor County, Iowa.

This mortgage was recorded in the office of the Recorder of Taylor County, Iowa on

June 8, 2006, in Book 155, Page 695, Document 20061509.  A true and correct copy

of the mortgage is attached as Exhibit B.

5.   On or about March 28, 2011, the Defendants executed and delivered to the Plaintiff,

acting through FSA, USDA, a promissory note whereby they promised to pay the

Plaintiff the sum of $60,000.00 with interest thereon at 4.5 percent per annum.  As

consideration for the note, the Plaintiff made a FSA loan [#30-07] to the Defendants

pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921, *et.*

*seq.*   A true and correct copy of the note for Loan #30-07 is attached as Exhibit C.

6.   At the same time, the Defendant, State Savings Bank, executed a Subordination to the

Government (Subordination) in the amount of $60,000.00 of its real estate mortgage

dated May 20, 2009, for $300,000.00[1].  The Subordination was recorded in the office

---

[1] The State Savings Bank mortgage of $300,000.00 was recorded in the office of the Recorder of
Taylor County on May 27, 2009, in Book 164, Page 295, Document 20091190.  *See* Exhibit E.

3

of the Recorder of Taylor County on March 29, 2011, in Book 104, Page 591, Document 111188. True and correct copies of the Subordination and the State Savings Bank mortgage are attached as Exhibits D and E.

7. At the same time and place and as part of the same transaction to secure the payment of the note, the Defendants executed and delivered to the Plaintiff a purchase-money security interest in the form of a real estate mortgage upon certain real estate in Taylor County, Iowa, within the jurisdiction of this Court, of which the property is described in ¶ 4. This mortgage was recorded in the office of the Recorder of Taylor County on March 29, 2011, in Book 168, page 903, Document 111189. A true and correct copy of the mortgage is attached as Exhibit F.

8. On or about February 21, 2013, the Defendants executed and delivered to the Plaintiff a purchase-money security interest in the form of a real estate mortgage upon certain real estate in Taylor County, Iowa, within the jurisdiction of this Court, of which the property is described in ¶ 4. This mortgage, securing the promissory notes and mortgages described above in ¶¶ 3-7, was recorded in the office of the Recorder of Taylor County on February 25, 2013, in Book 174, page 191, Document 131179. A true and correct copy of the mortgage is attached as Exhibit G[2].

9. The following loans made to Defendants Donald Alan Comer and Jennifer Lyn Burgoin-Comer by the United States, acting through FSA, are now due and owing as of October 1, 2020:

---

[2] Per the FSA, the notes/mortgages listed in Exhibit G for $180,000.00, $33,310.54, and $133,400.00 have been paid.

| Date of Note or Advance | Original Amount | Unpaid Principal | Accrued Interest to10/01/2020 | Daily Interest Accrual |
|---|---|---|---|---|
| June 5, 2006 [41-02] | $150,000.00 | $136,983.75 | $37,513.34 | $19.2340 Ex.A |
| March 28, 2011[30-07] | $ 60,000.00 | $ 55,927.70 | $17,060.28 | $ 6.8952 Ex.C |
| TOTALS | $210,000.00 | $192,911.45 | $54,573.62 | $26.1292 |

Copies of the notes are attached as Exhibits A and C. A true and correct copy of the FSA Certificate of Indebtedness dated October 1, 2020, is attached as Exhibit H.

10. Repayment of the indebtedness described above in ¶ 9 is secured by mortgages pledging the real estate located in Taylor County, Iowa and described above in ¶ 4. These mortgages are duly recorded as shown thereon and constitute valid prior liens on the described real estate. Copies of the mortgages are attached as Exhibits B, F, and G.

11. Repayment of the indebtedness is also secured by a perfected security interest in crops, equipment, and livestock (personal property). A true and correct copy of the Security Agreements dated August 9, 2012, February 21, 2013, and August 1, 2013 are attached as Exhibits I, J, and K.

12. The Plaintiff has been continually perfected by the filing of the Financing Statement, #E753938, on May 12, 2006; an Amendment #E759203 on June 6, 2006; and by the filing of the Continuation Statements #E10072547-9 on November 29, 2010; #E10072548-6 on November 20, 2010; and #E16001090-9 on January 6, 2016. True and correct copies of the Financing Statement, Amendment, and Continuation Statements are attached as Exhibit L.

5

13.  The Plaintiff is the owner and holder of the Promissory Notes, Real Estate Mortgages, and Security Agreements attached as Exhibits A, C, B, F, G, I, J, and K.

14.  On August 7, 2014, the FSA obtained a mediation release from the Iowa Mediation Service.  A true and correct copy of the mediation release is attached as Exhibit M.

15. The Defendants, Donald Alan Comer and Jennifer Lyn Burgoin-Comer, have failed to pay the Plaintiff installments of principal and interest when due in violation of the provisions of the Promissory Notes, Real Estate Mortgages and Security Agreements. The Plaintiff has accelerated the indebtedness and made demand for payment in full. No payment has been received and the dwelling on the property has been abandoned. A true and correct copy of the acceleration notice letter is attached as Exhibit N.

16.  No other action has been brought for the recovery of the balance due.

17.  The Plaintiff has completed all loan servicing requirements of applicable statues and regulations.

18.  The **IRS, an agency of the United States of America**, claims an interest in the real estate described herein pursuant to its Federal Tax Lien dated July 14, 2016, in the amount of $102,242.79, and recorded in the Office of the Taylor County Recorder on July 25, 2016 in Book 6, Page 532, Document 17100.  A true and correct copy of the IRS Federal recorded tax lien is attached as Exhibit O.

19.  The following Defendants may claim an interest the real estate described herein:

   a.  Defendant, **State Savings Bank**, may claim an interest pursuant to a Real Estate Mortgage dated May 20, 2009, and recorded in the office of the Taylor

County Recorder on May 27, 2009, in Book 164, Page 295, Document 20091190. *See* Exhibit E.

b. Defendant, **Carlson Seed Inc.**, may claim an interest pursuant to a judgment entered in Taylor County District Court on June 1, 2015, in Case LACV 09525 for $39,137.38 principal, plus 2.3% interest.

c. Defendant, **State of Iowa-Department of Revenue**, may claim an interest pursuant to the following tax liens:

    i. Notice dated October 24, 2016, in the amount of $34,962.82, and recorded in the office of the Taylor County Recorder on October 25, 2016, Book 6, Page 541, Document 17406.

    ii. Notice dated January 22, 2018, in the amount of $6,573.11, and recorded in the office of the Taylor County Recorder on January 23, 2018, Book 6, Page 561, Document 18849.

    iii. Notice dated November 8, 2018, in the amount of $34,996.18, and recorded in the office of the Taylor County Recorder on November 9, 2018, Book 6, Page 571, Document 19523.

    iv. Notice dated November 8, 2018, in the amount of $1,293.90, and recorded in the office of the Taylor County Recorder on November 9, 2018, Book 6, Page 572, Document 19524.

    v. Notice dated December 17, 2018, in the amount of $1,663.45, and recorded in the office of the Taylor County Recorder on December 18, 2018, Book 6, Page 582, Document 19704.

vi. Notice dated December 17, 2018, in the amount of $1,663.45, and

recorded in the office of the Taylor County Recorder on December 18,

2018, Book 6, Page 583, Document 19705.

True and correct copies of the State of Iowa-Department of Revenue recorded tax liens

are attached as Exhibit P.

20.   The interests of all the Defendants are junior and inferior to the interests of the

Plaintiff.

21.   None of the Defendants have a right to redemption after foreclosure sale herein.

WHEREFORE, Plaintiff prays judgment *in rem* against the mortgaged real estate and

personal property and *in personam* against Defendants, Donald Alan Comer and Jennifer Lyn

Burgoin-Comer, in the amount of a) $192,911.45 principal, advances and other recoverable

costs, and b) $54,573.62 interest as of October 1, 2020, plus interest accruing after that date at a

rate of $26.1292 per day to the date of judgment, together with interest at the legal rate

thereafter, plus c) the costs of this action.  Plaintiff further prays that its mortgages be declared

valid prior liens on the property described and that any advances the Plaintiff is authorized or

required to pay to protect the security during the pendency of this proceeding be allowed as a

valid lien on the real estate.

Plaintiff further prays that all legal right, title and interest which the Defendants have in

the property described in ¶ 4 be foreclosed and sold at public sale in accordance with 28 U.S.C.

§§ 2001-2004; the sale be subject to unpaid real estate taxes or special assessments; and the

proceeds arising from the sale be used to satisfy, in the order listed:

1.   Filing fees allowed pursuant to 28 U.S.C. § 2412(a)(2);

8

2.   The costs of the sale and this action;

3.   The interest accruing on Plaintiff's judgment *in rem* against the mortgaged real estate and personal property, and *in personam* against the Defendants Donald Alan Comer and Jennifer Lyn Burgoin-Comer;

4.   Plaintiff's judgment *in rem* against the mortgaged real estate and personal property, and *in personam* against the Defendants Donald Alan Comer and Jennifer Lyn Burgoin-Comer; and

5.   The balance, if any, be brought into the Court to await its further order.

Further, Plaintiff prays that its security agreements be declared a valid lien on the personal property described therein; and that its security agreements be foreclosed and the personal property be sold subject to prior liens, in the manner provided by law and as directed by the Court; and that the proceeds from said sale be used to satisfy first, the costs of said sale; second, the costs of this action; third, the indebtedness owed the Plaintiff as alleged herein; and the balance, if any be brought into the Court to await its further order.

Plaintiff further prays that all right, title, and interest in and to the described real estate and personal property of the Defendants and of all persons claiming by, through or under them be decreed to be junior and inferior to Plaintiff's mortgages and security agreements and be absolutely barred and foreclosed.  If the purchaser of the real estate be denied possession thereof, Plaintiff prays for issuance of a Writ of Assistance upon the filing of a proper Praecipe and prays the Court place the purchaser of the real estate in peaceable possession, without further order of this Court.

Plaintiff further prays that the Plaintiff, through FSA, be named a substitute custodian to be responsible for the location, moving and storage of the personal property subject to the foreclosure herein prior to its sale by United States Marshals, and authorizing the Marshal's Service and FSA to enter upon any real property upon which said personal property may be located in order to remove it for sale.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: */s/ Kristin E. Olson*
Kristin E. Olson
William C. Purdy
Assistant United States Attorney
U.S. Courthouse Annex, Suite 286
110 E. Court Avenue
Des Moines, Iowa  50309
Telephone: (515) 473-9300
Facsimile: (515) 473-9282
Email: kristin.olson@usdoj.gov

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

**PROMISSORY NOTE**

| 8. KIND OF LOAN |
|---|
| Type: FO   [x] Regular |
| [ ] Limited Resource |
| Pursuant to: |
| [x] Consolidated Farm & Rural Development Act |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name |
|---|
| DONALD ALAN COMER AND JENNIFER LYN BURGOIN-COMER |

| 2. State | 3. County |
|---|---|
| IOWA | TAYLOR |

| 4. Case Number | 5. Date |
|---|---|
| 16-087- 8672 | JUNE 5, 2006 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 41 | 02 |

**9. ACTION REQUIRING NOTE**

| | |
|---|---|
| [x] Initial loan | [ ] Rescheduling |
| [ ] Subsequent loan | [ ] Reamortization |
| [ ] Consolidated & subsequent loan | [ ] Credit sale |
| [ ] Consolidation | [ ] Deferred payments |
| [ ] Conservation easement | [ ] Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in CLARINDA IA

_____, or at such other place as the Government may later designate in writing, the principal sum of

ONE HUNDRED FIFTY THOUSAND AND NO/CENTS------------------------------------------------------------- dollars

($ 150,000.00--------------------------------- ), plus interest on the unpaid principal balance at the RATE of

FIVE AND ONE EIGHTH----------------------------------------------- percent ( 5.125---- %) per annum and

ZERO ---------------------------------------------------------- dollars ($ 0.0 --------------- )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in FORTY-ONE (41) installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| $ 8,892.00 | on 01-01-2007 | ; $ N/A | on N/A | ; |
| $ N/A | on N/A | ; $ N/A | on N/A | ; |
| $ N/A | on N/A | ; $ N/A | on N/A | ; |
| $ N/A | on N/A | ; $ N/A | on N/A | ; |
| $ N/A | on N/A | ; $ N/A | on N/A | ; |
| $ N/A | on N/A | ; $ N/A | on N/A | ; |

and $ 8,892.00 thereafter on JANUARY 1ST of each YEAR until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable FORTY (40) years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

DC   6-5-06
Initials / Date

6-5-06
Initials / Date

**Exhibit A
pg. 1 of 2**

**FSA-1940-17** (10-26-99)

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the Government or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

DONALD ALAN COMER

_____ (Borrower)

JENNIFER LYN BURGOIN-COMER

_____

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ 150000 | 6-2-06 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | **TOTAL** | $ 150,000.00 | |



Document 20061509

Book 155 Page 695 Type 04 001 Pages 5
Date 6/08/2006 Time 8:40AM
Rec Amt $27.00

RICK SHELEY, RECORDER
TAYLOR COUNTY IOWA

**Prepared By:**

| Christine K. Irvin | 1001 S. 8th, Clarinda IA | 712-542-5137 |
|---|---|---|
| (Name) | (Address) | (Telephone No.) |

**Return To:**

| Farm Service Agency | 1001 S. 8th, Clarinda IA | 712-542-5137 |
|---|---|---|
| (Name) | (Address) | (Telephone No.) |

*Position 5*

## FSA-1927-1 IA

(08-08-05)

**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency

# MORTGAGE FOR IOWA

THIS MORTGAGE ("instrument") is made _____ June 5 _____ , 20 _06_ . The mortgagor (Grantor) is

Donald Alan Comer and Jennifer Lyn Burgoin - Comer, husband and wife

_____ ("Borrower") whose mailing address is _____

_____ . This instrument is given to the United States of
America, acting through the Farm Service Agency, United States Department of Agriculture ("Government") (Grantee) located at
10,500 Buena Vista Court, Des Moines, Iowa 50322-3732 whose local representative is  Gary C.Armstrong,
Farm Loan Manager _____ , (name and title), whose post office address is

1001 S. 8th, Clarinda IA  51632 .

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called
"note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize
acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 06-05-2006 | $150,000.00 | 5.125% | 06-05-2046 |
| 06-05-2006 | $75,000.00 | 5.000% | 06-05-2013 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased
as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

In consideration of any loan made by the Government pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921
et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property
situated in the State of Iowa, County or Counties of  Taylor _____ :
The North Half of the Northwest Quarter (N1/2NW1/4) of Section Four (4), Township
Sixty-seven (67) North, Range Thirty-five (35) West of the 5th P.M., Taylor County,
Iowa.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures,
hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income
therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale,
lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a

Initial _DC,_  date _6-5-06_

Initial _XC_  date _6-5-06_

FSA-1927-1 IA (08-08-05) Page 1 of 5

**Exhibit B
pg. 1 of 5**

security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2. **Fees.** Borrower shall pay to the Government such fees and other changes that may now or later be required by Government regulations.

3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property; costs of recording this and other instruments; attorney's fees; trustees' fees; court costs; and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

Initial  DC.  date  6-5-06
Initial  XC  date  6-5-06

**Exhibit B**
**pg. 2 of 5**

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any Government or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances; gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials, containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may: (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government – whether once or often – in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right of remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so: (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above and to the local representative of the agency at the mailing address above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

Initial ___DC___ date __6-5-06__

Initial ___AC___ date __6-5-06__

FSA-1927-1 IA (08-08-05) Page 3 of 5

**Exhibit B**
**pg. 3 of 5**

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Advances by Government.** NOTICE: This mortgage secures credit in the amount of ___260,000.00___ . Loans and advances up to this amount, together with interest, are senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens.

31. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

Initial DC  date 6-5-06
Initial AC  date 6-5-06

FSA-1927-1 IA (08-08-05) Page 4 of 5

**32. I (We) understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my rights to this protection for this property with respect to claims based upon this contract.**

| Donald Alan Comer | | Jennifer Lyn Burgoin-Comer | |
| --- | --- | --- | --- |
| Borrower (Grantor) | Date | Borrower (Grantor) | Date |

Donald A Comer          6-5-06       Jennifer Lyn Burgoin Comer   6-5-06

| Borrower (Grantor) | Date | Borrower (Grantor) | Date |
| --- | --- | --- | --- |

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

| Donald Alan Comer | (SEAL) | Jennifer Lyn Burgoin-Comer | (SEAL) |
| --- | --- | --- | --- |
| Borrower (Grantor) | | Borrower (Grantor) | |

Donald A Comer    (SEAL)       Jennifer Lyn Burgoin Comer (SEAL)

| Borrower (Grantor) | (SEAL) | Borrower (Grantor) | (SEAL) |
| --- | --- | --- | --- |

ACKNOWLEDGMENTS

(Individual)

STATE OF IOWA
COUNTY OF ___Page_____ } ss.

On this ____5th____ day of __June,2006__ before me personally appeared __Donald Alan__

__Comer & Jennifer Lyn Burgoin-Comer__ , to be known to me to be the same person(s) whose name is subscribed to the

foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires

SANFORD A. TURNER
Commission Number 404580
MY COMMISSION EXPIRES
9-26-08

*Note: Page 6 of 6 applies to entities only and will not be recorded for individuals.*

Sanford a Turner
SANFORD A. TURNER
NOTARY PUBLIC

| Initial | DC | date | 6-5-06 |
| --- | --- | --- | --- |
| Initial | JC | date | 6-5-06 |

FSA-1927-1 IA (08-08-05) Page 5 of 5

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

**FSA-2026**
(09-07-10)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name<br>Donald Alan Comer and Jennifer Lyn Burgoin-Comer | | 2. State<br>Iowa | 3. County<br>Taylor |
|---|---|---|---|
| 4. Case Number<br>16-87- █ 8672 | 5. Fund Code<br>30 | 6. Loan Number<br>07 | 7. Date<br>March 28, 2011 |

| 8. TYPE OF ASSISTANCE<br>CL-Reg | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan   ☐ Conservation easement   ☐ Deferred payments

☐ Consolidation   ☐ Rescheduling   ☐ Debt write down

☐ Subsequent loan   ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)* Creston, IA 50801 or at such other place as the Government may later designate in writing, the principal sum of *(b)* SIXTY THOUSAND AND NO/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - dollars *(c)* ($ 60,000 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - , plus interest on the unpaid principal balance at the **RATE** of *(d)* FOUR AND ONE-HALF - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - percent *(e)* 4.5 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* TWENTY-ONE (21) installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 4,613 | 3-28-2012 | $ "NA" | |
| $ "NA" | | $ "NA" | |
| $ "NA" | | $ "NA" | |
| $ "NA" | | $ "NA" | |

and *(d)* $ 4,613 thereafter on the *(e)* 28TH OF MARCH of each *(f)* YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* TWENTY (20) years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial ___   Date 3-28-11

3-28-11

**Exhibit C**
**pg. 1 of 2**

FSA-2026 (09-07-10)

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

Donald Alan Comer

Jennifer Lyn Burgoin-Comer

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended).  The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.).  The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower.  Providing the requested information is voluntary.  However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees.  The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0237.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

**Exhibit C**
**pg. 2 of 2**



```
Document 111188
Book 104 Page 591 Type 08 018 Pages 2
Date 3/29/2011  Time 10:15AM
Rec Amt $14.00


      RICK SHELEY, RECORDER
      TAYLOR COUNTY IOWA
```

**Prepared By:**

Robert E. Miller          P.O. Box 326, Creston, IA 50801      641-782-8455
_(Name)_                        _(Address)_                              _(Telephone No.)_

**Return To:**

Robert E. Miller          P.O. Box 326, Creston, IA 50801      641-782-8455
_(Name)_                        _(Address)_                              _(Telephone No.)_

This form is available electronically.

Form Approved – OMB No. 0560-0237
_(See Page 2 for Privacy Act and Public Burden Statement)_

| FSA-2361 (10-27-08) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency |

### SUBORDINATION TO THE GOVERNMENT

_(1)_   State Savings Bank                                                               ,

(Lienholder) is the owner and holder of the following described instruments executed by _(2)_   Donald Alan Comer

and Jennifer Lynn Burgoin Comer

(Borrower) of _(3)_   Taylor                County, State of _(4)_   Iowa

:

| (5) Instrument Title | (6) Instrument Date | (7) Date Filed | (8) Office Filed | (9) Document File No. |
|---|---|---|---|---|
| R.E.Mortgage | 5-20-2009 | 5-27-2009 | Recorder's | 164/295 |
|  |  |  |  |  |
|  |  |  |  |  |

The United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency,

(Government) has agreed to loan _(10)_ $   60,000                to the Borrower for the following purposes _(11)_:

To put up cattle barn

THEREFORE, in consideration of the Government's agreement to make such loan to the Borrower, the Lienholder
_(a)_ consents to the borrower obtaining the loan from the Government for such purposes; and _(b)_ agrees to and does
subordinate in favor of the Government and its successors and assigns its liens and security interests created or evidenced by
the above-described instruments insofar as they cover the following described property _(12)_:

The North Half of the Northwest Quarter (N1/2NW1/4) of Section Four(4), Township
Sixty-seven(67) North, Range Thirty-five(35) West of the 5th P.M., Taylor, County,
Iowa.

**Exhibit D**
**pg. 1 of 2**

FSA-2361 (10-27-08)                                                                                      Page 2 of 2

This subordination covers: *(1)* the amount actually loaned by the Government to the Borrower (principal and accrued interest) for the foregoing purposes, *(2)* future advances for taxes, insurance, payment of prior liens, and protection of the security, and *(3)* the amount actually advanced for foreclosure costs made by the Government.

**IN WITNESS WHEREOF,** the lienholder has executed this subordination agreement by signing on

(13) _____*3 - 22 - 11*_____  .
                (Date)

_____*Larry D. Loghry*_____        _____*Sr. Vice President*_____
(14) Name of Lienholder's Representative            (15) Title

_____
(16) Signature

## 17. ACKNOWLEDGEMENT

State of Iowa
County of _____*Taylor*_____ } ss.

On this _____*22*_____ day of _____*March*_____ , *2011* before me personally appeared
_____*Larry Loghry*_____ , to be known to me to be the
same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:
_____*9/13/13*_____        _____*Vickie S Sprague*_____
Notary Public

```
VICKIE SPARGUE
COMMISSION NUMBER 712552
My Comm. Expires
September 13, 2013
```

NOTE:   The following statements are made in accordance with the Privacy Act of 1974 (5 USC 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 USC 1921 et seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act (FOIA), to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including your Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of an application or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its program and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information ( Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of Discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, SW., Washington, DC 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

**Exhibit D**
**pg. 2 of 2**



Document 20091190

Book 164 Page 295 Type 04 001 Pages 9
Date 5/27/2009 Time 2:15PM
Rec Amt $47.00

RICK SHELEY, RECORDER
TAYLOR COUNTY IOWA

——— State of Iowa ——— Space Above This Line For Recording Data ———

Prepared By: Kay Dukes
State Savings Bank
612 Central, Bedford, IA 50833
(712) 523-2131

Return To: State Savings Bank
612 Central
P.O. Box 68
Bedford, IA 50833

## OPEN-END REAL ESTATE MORTGAGE
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage is <u>05-20-2009</u> and the parties and their addresses are as follows:

   MORTGAGOR: Donald Alan Comer and
   Jennifer Lyn Burgoin-Comer,
   HUSBAND AND WIFE

   ☐ Refer to the Addendum which is attached and incorporated herein for
   additional Mortgagors. The Addendum is located on _____ .

   LENDER: State Savings Bank
   Organized and existing under the laws of the state of Iowa
   612 Central
   P.O. Box 68
   Bedford, IA 50833

2. **MORTGAGE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Mortgagor grants, bargains, warrants, conveys and mortgages to Lender the following described property: (If the legal description of the property is not on page one of this Mortgage, it is located on _____ .)

   The North Half of the Northwest Quarter (N1/2NW1/4) of Section Four (4),
   Township Sixty-seven (67) North, Range Thirty-five (35) West of the 5th P.M.,
   Taylor County, Iowa.

**IOWA - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT**                                    *(page 1 of 9)*
(NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
*Experé* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

**Exhibit E**
**pg. 1 of 9**

The property is located in **Taylor** _____ at **2814 Denver Ave.**
(County)

_____ , **New Market** _____ , Iowa **51646** _____
(Address)                          (City)                    (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

NOTICE: THIS MORTGAGE SECURES CREDIT IN THE AMOUNT OF $ **300,000.00** _____.
LOANS AND ADVANCES UP TO THIS AMOUNT, TOGETHER WITH INTEREST, ARE SENIOR TO INDEBTEDNESS TO OTHER CREDITORS UNDER SUBSEQUENTLY RECORDED OR FILED MORTGAGES AND LIENS.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Mortgage at any one time shall not exceed the amount stated above. This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Mortgage and does not apply to advances (or interest accrued on such advances) made under the terms of this Mortgage to protect Lender's security and to perform any of the covenants contained in this Mortgage. Future advances are contemplated and, along with other future obligations, are secured by this Mortgage even though all or part may not yet be advanced. Nothing in this Mortgage, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt) *(e.g., borrower's name, note amount, interest rate, maturity date):* A Promissory Note dated 05-20-2009 in the original amount of $300,000.00 with a maturity date of 01-10-2014

   B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage whether or not this Mortgage is specifically referred to in the evidence of debt and whether or not such future advances or obligations are incurred for any purpose that was related or unrelated to the purpose of the Evidence of Debt.
   C. All obligations Mortgagor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Mortgage, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Mortgagor's performance under the terms of any instrument evidencing a debt by Mortgagor to Lender and any Mortgage securing, guarantying, or otherwise relating to the debt.
   If more than one person signs this Mortgage as Mortgagor, each Mortgagor agrees that this Mortgage will secure all future advances and future obligations described above that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. This Mortgage will not secure any other debt if Lender fails, with respect to such other debt, to make any required disclosure that this Mortgage or if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Mortgagor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Mortgage.

6. **WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, warrant, convey, sell, and mortgage the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the

_____   _____   _____   _____ *(page 2 of 9)*

receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Mortgage. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses which Mortgagor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Mortgage, Mortgagor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Lender consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Mortgagor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Mortgage is released.

10. **TRANSFER OF AN INTEREST IN THE MORTGAGOR.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if (1) a beneficial interest in Mortgagor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership or similar entity; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity. However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Mortgage.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Mortgagor is an entity other than a natural person (such as a corporation or other organization), Mortgagor makes to Lender the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
    A. Mortgagor is an entity which is duly organized and validly existing in the Mortgagor's state of incorporation (or organization). Mortgagor is in good standing in all states in which Mortgagor transacts business. Mortgagor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Mortgagor operates.
    B. The execution, delivery and performance of this Mortgage by Mortgagor and the obligation evidenced by the Evidence of Debt are within the power of Mortgagor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than disclosed in writing Mortgagor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Mortgagor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will give Lender prompt notice of any loss or damage to the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Mortgagor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Mortgagor also agrees that the nature of the occupancy and use will not change without Lender's prior written consent.
No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Mortgage. Mortgagor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

13. **AUTHORITY TO PERFORM.** If Mortgagor fails to perform any of Mortgagor's duties under this Mortgage, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Mortgage, Lender may, without notice, perform the duties or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any

_____   _____   _____   _____  *(page 3 of 9)*

*Exp*er*eš* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-IA  10/24/2005

amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may do whatever is necessary to protect Lender's security interest in the Property. This may include completing the construction.

Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Mortgage. Any amounts paid by Lender for insuring, preserving or otherwise protecting the Property and Lender's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

14. **ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, warrants, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

    A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).

    B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Assignment. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied.

As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Mortgagor will be in default if any of the following occur:

    A. Any party obligated on the Secured Debt fails to make payment when due;

    B. A breach of any term or covenant in this Mortgage, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;

    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Mortgagor or any person or entity obligated on the Secured Debt;

    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Mortgagor or any person or entity obligated on the Secured Debt;

_____  _____  _____  _____ *(page 4 of 9)*

E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;

F. A material adverse change in Mortgagor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or

G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Mortgage in a manner provided by law if this Mortgagor is in default. Upon a default by the Mortgagor, the Lender may take possession of the Property itself or through a court appointed receiver, without regard to the solvency or insolvency of the Mortgagor, the value of the Property, the adequacy of the Lender's security, or the existence of any deficiency judgment, and may operate the Property and collect the rents and apply them to the costs of operating the Property and/or to the unpaid debt.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Mortgage and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

18. **REDEMPTION.** Mortgagor agrees that in the event of foreclosure of this Mortgage, at the sole discretion of Lender, Lender may elect to reduce or extend the period of redemption for the sale of the Property to a period of time as may then be authorized under the circumstances and under any section of Iowa Code Chapter 628, or any other Iowa Code section, now in effect or as may be in effect at the time of foreclosure.

19. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Mortgage. Mortgagor will also pay on demand all of Lender's expenses incurred in collecting, insuring, preserving or protecting the Property or in any inventories, audits, inspections or other examination by Lender in respect to the Property. Mortgagor agrees to pay all costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under this Mortgage, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Lender agrees to release this Mortgage and Mortgagor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

20. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Mortgagor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:

A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

<span style="float:right">*(page 5 of 9)*</span>

*Expere®* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-IA  10/24/2005

D. Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Mortgagor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Mortgage and in return Mortgagor will provide Lender with collateral of at least equal value to the Property secured by this Mortgage without prejudice to any of Lender's rights under this Mortgage.

L. Notwithstanding any of the language contained in this Mortgage to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Mortgage regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

21. **CONDEMNATION.** Mortgagor will give Lender prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Mortgagor further agrees to notify Lender of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Mortgage. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

22. **INSURANCE.** Mortgagor agrees to maintain insurance as follows:

A. Mortgagor shall keep the improvements now existing or hereafter built on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Mortgage.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "lender loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

_____   _____   _____   _____ *(page 6 of 9)*

*Expert* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-IA  10/24/2005

Unless Lender and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Debt, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Mortgagor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Mortgagor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

23. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

24. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem necessary. Mortgagor warrants that all financial statements and information Mortgagor provides to Lender are, or will be, accurate, correct, and complete. Mortgagor agrees to sign, deliver, and file as Lender may reasonably request any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Mortgage and Lender's lien status on the Property. If Mortgagor fails to do so, Lender may sign, deliver, and file such documents or certificates in Mortgagor's name and Mortgagor hereby irrevocably appoints Lender or Lender's agent as attorney in fact to do the things necessary to comply with this section.

25. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Mortgage are joint and individual. If Mortgagor signs this Mortgage but does not sign the Evidence of Debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. Mortgagor agrees that Lender and any party to this Mortgage may extend, modify or make any change in the terms of this Mortgage or the Evidence of Debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Mortgage. The duties and benefits of this Mortgage shall bind and benefit the successors and assigns of Mortgagor and Lender.

If this Mortgage secures a guaranty between Lender and Mortgagor and does not directly secure the obligation which is guarantied, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

26. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Mortgage is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Mortgage is complete and fully integrated. This Mortgage may not be amended or modified by oral agreement. Any section or clause in this Mortgage, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Mortgage cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Mortgage. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Mortgage are for convenience only and are not to be used to interpret or define the terms of this Mortgage. Time is of the essence in this Mortgage.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Mortgage, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

28. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives any rights relating to reinstatement, the marshalling of liens and assets, all rights of dower and distributive share and all homestead exemption rights relating to the Property.

29. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Mortgage:

☐ **Construction Loan.** This Mortgage secures an obligation incurred for the construction of an improvement on the Property.

☒ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property.

_____   _____   _____   _____   *(page 7 of 9)*

*Experₑ* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005

☒ **Crops; Timber; Minerals; Rents, Issues and Profits.** Mortgagor grants to Lender a security interest in all crops, timber and minerals located on the Property as well as all rents, issues and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☒ **Personal Property.** Mortgagor grants to Lender a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Mortgagor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☒ **Filing As Financing Statement.** Mortgagor agrees and acknowledges that this Mortgage also suffices as a financing statement and as such, may be filed of record as a financing statement for purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Mortgage is sufficient as a financing statement.

**30. OTHER TERMS.** If checked, the following are applicable to this Mortgage:

☐ **Purchase Money Mortgage.** This is a purchase money mortgage as defined by Iowa law.

☒ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Mortgage will remain in effect until released.

☒ **Agricultural Property.** Mortgagor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Mortgagor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Mortgagor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Mortgage and in any attachments. Mortgagor also acknowledges receipt of a copy of this Mortgage on the date stated above on Page 1.

☐ Actual authority was granted to the parties signing below by resolution signed and dated

(Entity Name):

| | |
|---|---|
| (Signature) Donald Alan Comer | 5-20-09 (Date) |
| (Signature) Jennifer Lyn Burgoin-Comer | 5-20-09 (Date) |
| (Signature) | (Date) |
| (Signature) | (Date) |

*(page 8 of 9)*

**Exhibit E**
**pg. 8 of 9**

**ACKNOWLEDGMENT:**

(Individual)

STATE OF <u>Iowa</u>, COUNTY OF <u>Taylor</u> } ss.

On this <u>20th</u> day of <u>May, 2009</u> before me, a Notary Public in the state of Iowa, personally appeared <u>Donald Alan Comer; Jennifer Lyn Burgoin-Comer, HUSBAND AND WIFE</u>

to me known to be the person(s) named in and who executed the foregoing instrument, and acknowledged that <u>he/she/they</u>

executed the same as <u>his/her/their</u> voluntary act and deed.

My commission expires: 05-02-2012

*Kay Dukes*

(Notary Public)

Kay Dukes

> **KAY DUKES**
> Commission Number 160416
> My Commission Expires
> May 2, 2012

(Business or Entity Acknowledgment)

STATE OF _____, COUNTY OF _____ } ss.

On this _____ day of _____ before me, a Notary Public in the state of Iowa, personally appeared _____

to me personally known, who being by me duly sworn or affirmed did say that that person is

_____

of said entity, that (the seal affixed to said instrument is the seal of said entity or no seal has been procured by said entity) and that said instrument was signed and sealed, if applicable, on behalf of the said entity by authority of its board of directors/partners/members and the said

_____

acknowledged the execution of said instrument to be the voluntary act and deed of said entity by it voluntarily executed.

My commission expires:

_____

(Notary Public)

(In the following statement "I" means the Mortgagor.) **I understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my rights to this protection for this property with respect to claims based upon this contract.**

X _____  5-20-09

(Signature) Donald Alan Comer    (Date)

X _____  5.20.09

(Signature) Jennifer Lyn Burgoin-Comer    (Date)

_____  _____  _____  _____ *(page 9 of 9)*

*Experti* ©1993, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-IA 10/24/2005



Document 111189

Book 168 Page 903 Type 04 001 Pages 5
Date 3/29/2011 Time 10:17AM
Rec Amt $29.00

RICK SHELEY, RECORDER
TAYLOR COUNTY IOWA

**Prepared By:**

| Robert E. Miller | P.O. Box 326, Creston, IA 50801 | 641-782-8455 |
|---|---|---|
| (Name) | (Address) | (Telephone No.) |

**Return To:**

| Robert E. Miller | P.O. Box 326, Creston, IA 50801 | 641-782-8455 |
|---|---|---|
| (Name) | (Address) | (Telephone No.) |

*Position 5*

**FSA-2029 IA**

Form Approved – OMB No. 0560-0237
(See Page 5 for Privacy Act and Public Burden Statements.)

(09-12-08)
**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency
# MORTGAGE FOR IOWA

THIS MORTGAGE ("instrument") is made ___March 28___, 20 _11_. The mortgagor (Grantor) is

Donald Alan Comer and Jennifer Lyn Burgoin-Comer,

husband and wife,          ("Borrower") whose mailing address is ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. This instrument is given to the United States of
America, acting through the Farm Service Agency, United States Department of Agriculture ("Government") (Grantee) located at
10500 Buena Vista Court, Des Moines, Iowa 50322-3732 whose local representative is ___Thomas D. Fry,___

Farm Loan Manager                , (name and title), whose post office address is

P.O. Box 326, Creston, IA  50801                          .

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| June 5, 2006 | $150,000.00 | 5.125% | June 5, 2046 |
| June 5, 2006 | 75,000.00 | 5.000% | June 5, 2013 |
| February 8, 2011 | 180,000.00 | 1.750% | February 8, 2018 |
| March 28, 2011 | 60,000.00 | 4.500% | March 28, 2031 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

In consideration of any loan made by the Government pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 et. seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Iowa, County or Counties of ___Taylor___ :
The North Half of the Northwest Quarter (N1/2NW1/4) of Section Four(4), Township
Sixty-seven(67) North, Range Thirty-five(35) West of the 5th P.M., Taylor, County,
Iowa.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a

Initial _DC_ date _3-28-11_
Initial _JC_ date _3-28-11_

FSA-2029 IA (09-12-08) Page 1 of 5

**Exhibit F
pg. 1 of 5**

security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS.  Borrower COVENANTS AND AGREES as follows:

1.   **Payment.**  Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.   **Fees.**  Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.   **Application of payments.**  Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.   **Taxes, liens, etc.**  Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.   **Assignment.**  Borrower grants and assigns as additional security all the right, title and interest in:  (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements.  Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full.  Such money may, at the option of the Government, be applied on the debt whether due or not.  The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government.  In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases.  Borrower warrants that as of the date of executing this instrument no default exists under existing leases.  Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law.  Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents.  Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.   **Insurance.**  Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government.  If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations.  All insurance policies and renewals shall include a standard mortgagee clause.

7.   **Advances by Government.**  The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower.  Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements.  All such advances shall bear interest at the same rate as the note which has the highest interest rate.  All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand.  No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay.  Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.   **Protection of lien.**  Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note.  Such expenses include, but are not limited to:  costs of evidence of title to, and survey of, the property; costs of recording this and other instruments; attorney's fees; trustees' fees; court costs; and expenses of advertising, selling, and conveying the property.

9.   **Authorized purposes.**  Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.  **Repair and operation of property.**  Borrower shall:  (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner.  Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.



Initial   DC   date  3-28-11
Initial   ____   date  3-28-11

**Exhibit F**
**pg. 2 of 5**

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any Government or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may: (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government – whether once or often – in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so: (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above and to the local representative of the agency at the mailing address above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

Initial   DC   date   3-28-11
Initial   JC   date   3-28-11

FSA-2029 IA (09-12-08) Page 3 of 5

**Exhibit F**
**pg. 3 of 5**

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under the terms of this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Advances by Government. NOTICE:** This mortgage secures credit in the amount of _$484,029_. Loans and advances up to this amount, together with interest, are senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens.

31. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

Initial   DC   date   3-28-11
Initial   JC   date   3-28-11

**32.  I (We) understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my rights to this protection for this property with respect to claims based upon this contract.**

_____     _____     ~~Donald Alan Comer~~   3-28-11
Borrower (Grantor)              Date      Donald Alan Comer          Date
                                          Borrower (Grantor)

_____     _____     ~~Jennifer Lyn Burgoin Comer~~   3-28-11
Borrower (Grantor)              Date      Jennifer Lyn Burgoin-           Date
                                          Comer
                                          Borrower (Grantor)


By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)          ~~Donald Alan Comer~~  (SEAL)
                                         Donald Alan Comer
Borrower (Grantor)                       Borrower (Grantor)

_____ (SEAL)          ~~Jennifer Lyn Burgoin-Comer~~ (SEAL)
                                         Jennifer Lyn Burgoin-Comer
Borrower (Grantor)                       Borrower (Grantor)


## ACKNOWLEDGMENTS

State of Iowa                }
County of ____Union_____   } ss.

On this ___28th_____day of __March_____ , _2011____ before me personally appeared ___Donald Alan Comer and Jennifer Lyn Burgoin-Comer _____, to be known to me to be the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires: _____

Notary Public _____        _Vickie L. Stephens_

```
VICKIE L STEPHENS
Notarial Seal - Iowa
Commission # 137082
My Commission Expires 9-19-12
```

NOTE:   The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of this request or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD).  USDA is an equal opportunity provider and employer.

FSA-2029 IA (09-12-08) Page 5 of 5

**Exhibit F
pg. 5 of 5**



Document 131179

Book 174 Page 191 Type 04 001 Pages 5
Date 2/25/2013 Time 1:00PM
Rec Amt $27.00

RICK SHELEY, RECORDER
TAYLOR COUNTY IOWA

**Prepared By:**

| MARLA CRAWFORD | 1201 E South Street,Mount Ayr, IA | |
| Farm Service Agency | 50854 | 641-464-2251 |
| (Name) | (Address) | (Telephone No.) |

**Return To:**

| Farm Service Agency | 1201 E South Street, Mount Ayr, IA 50854 | 641-464-2251 |
| (Name) | (Address) | (Telephone No.) |

*Position 5*

**FSA-2029 IA**                                   Form Approved – OMB No. 0560-0237
                                                  *(See Page 5 for Privacy Act and Public Burden Statements.)*
(09-12-08)                    **UNITED STATES DEPARTMENT OF AGRICULTURE**
                                              Farm Service Agency
                                       **MORTGAGE FOR IOWA**

THIS MORTGAGE ("instrument") is made _____February 21_____ , 20 _13_ . The mortgagor (Grantor) is

Donald Alan Comer and Jennifer Lyn Burgoin-Comer,

husband and wife          ("Borrower") whose mailing address is ████████████████

████████████ . This instrument is given to the United States of
America, acting through the Farm Service Agency, United States Department of Agriculture ("Government") (Grantee) located at
10500 Buena Vista Court, Des Moines, Iowa 50322-3732 whose local representative is   RHONDA K. TRIGGS,
Farm Loan Manager _____ , (name and title), whose post office address is

1201 E South Street, Mount Ayr, IA 50854 .

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called
"note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize
acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| June 5, 2006 | $150,000.00 | 5.125% | June 5, 2046 |
| February 8, 2011 | 180,000.00 | 1.750% | February 8, 2018 |
| March 28, 2011 | 60,000.00 | 4.500% | March 28, 2031 |
| February 21, 2012 | 33,310.54 | 1.125% | February 21, 2027 |
| February 21, 2012 | 113,400.00 | 1.125% | February 21, 2019 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased
as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

In consideration of any loan made by the Government pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921
et. seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property
situated in the State of Iowa, County or Counties of   Taylor _____ :
The North Half of the Northwest Quarter (N1/2NW1/4) of Section Four(4), Township
Sixty-seven(67) North, Range Thirty-five(35) West of the 5th P.M., Taylor, County,
Iowa.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures,
hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income
therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale,
lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a

Initial *DAC*    date *2-21-13*
Initial *JLC*    date *2-21-13*          **Exhibit G**            FSA-2029 IA (09-12-08) Page 1 of 5
                                          **pg. 1 of 5**

security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government; and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS.  Borrower COVENANTS AND AGREES as follows:

1.   **Payment**.  Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.   **Fees**.  Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3.   **Application of payments**.  Unless applicable law or Government's regulations provide otherwise, all payments received by the Government shall be applied in the following order of priority:  (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.   **Taxes, liens, etc**.  Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.   **Assignment**.  Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements.  Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full.  Such money may, at the option of the Government, be applied on the debt whether due or not.  The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government.  In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases.  Borrower warrants that as of the date of executing this instrument no default exists under existing leases.  Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law.  Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents.  Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.   **Insurance**.  Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government.  If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. § 4001 et. seq. and Government regulations.  All insurance policies and renewals shall include a standard mortgagee clause.

7.   **Advances by Government**.  The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower.  Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements.  All such advances shall bear interest at the same rate as the note which has the highest interest rate.  All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand.  No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay.  Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.   **Protection of lien**.  Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note.  Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property; costs of recording this and other instruments; attorney's fees; trustees' fees; court costs; and expenses of advertising, selling, and conveying the property.

9.   **Authorized purposes**.  Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10.  **Repair and operation of property**.  Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner.  Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

Initial  DAC  date  2-21-13
Initial  JLC  date  2-21-13

**Exhibit G**
**pg. 2 of 5**

11. **Legal compliance**. Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property**. Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection**. At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances**. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any Government or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance**. In accordance with Government regulations, the Government may: (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government – whether once or often – in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation**. If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture**. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement**. Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization**. Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands**. Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination**. If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so: (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices**. Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above and to the local representative of the agency at the mailing address above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability**. This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

Initial  DAC  date  2-21-13
Initial  JLC  date  2-21-13

**Exhibit G**
**pg. 3 of 5**

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; death; incompetence; bankruptcy.** Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28. **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29. **Assignment of leases and rents.** Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30. **Advances by Government. NOTICE:** This mortgage secures credit in the amount of _____617,217.12_____ . Loans and advances up to this amount, together with interest, are senior to indebtedness to other creditors under subsequently recorded or filed mortgages and liens.

31. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

Initial  DAC  date  2-21-13
Initial  JLC  date  2-21-13

**Exhibit G**
**pg. 4 of 5**

**32.  I (We) understand that homestead property is in many cases protected from the claims of creditors and exempt from judicial sale; and that by signing this contract, I voluntarily give up my rights to this protection for this property with respect to claims based upon this contract.**

_____   _____   _____   _____
Donald Alan Comer                          Date                                                Date
Borrower (Grantor)                                       Borrower (Grantor)

_____   _____   _____   _____
Jennifer Lyn                               Date                                                Date
Burgoin-Comer                                            Borrower (Grantor)
Borrower (Grantor)

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)                   _____ (SEAL)
Donald Alan Comer
Borrower (Grantor)                                       Borrower (Grantor)

_____ (SEAL)                   _____ (SEAL)
Jennifer Lyn
Burgoin-Comer
Borrower (Grantor)                                       Borrower (Grantor)

### ACKNOWLEDGMENTS

State of Iowa         }
County of Ringgold   ss.

On this 21ˢᵗ day of February, 2013, before me personally appeared Donald Alan Comer and Jennifer Lyn Burgoin-Comer to be known to me to be the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

JODY L. FOX
Commission Number 154431
My Commission Expires
12/28/2013

_____
Jody L Fox          Notary Public

NOTE:   The following statements are made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a): the Farm Service Agency (FSA) is authorized by the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.), or other Acts, and the regulations promulgated thereunder, to solicit the information requested on its application forms. The information requested is necessary for FSA to determine eligibility for credit or other financial assistance, service your loan, and conduct statistical analyses. Supplied information may be furnished to other Department of Agriculture agencies, the Internal Revenue Service, the Department of Justice or other law enforcement agencies, the Department of Defense, the Department of Housing and Urban Development, the Department of Labor, the United States Postal Service, or other Federal, State, or local agencies as required or permitted by law. In addition, information may be referred to interested parties under the Freedom of Information Act, to financial consultants, advisors, lending institutions, packagers, agents, and private or commercial credit sources, to collection or servicing contractors, to credit reporting agencies, to private attorneys under contract with FSA or the Department of Justice, to business firms in the trade area that buy chattel or crops or sell them for commission, to Members of Congress or Congressional staff members, or to courts or adjudicative bodies. Disclosure of the information requested is voluntary. However, failure to disclose certain items of information requested, including Social Security Number or Federal Tax Identification Number, may result in a delay in the processing of this request or its rejection.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD).  USDA is an equal opportunity provider and employer.

**Exhibit G
pg.  5 of 5**

**FARM SERVICE AGENCY**
10500 Buena Vista Court
Des Moines, IA  50322

## CERTIFICATE OF INDEBTEDNESS

Debtor Name:

Donald Comer
Jennifer Burgoin-Comer

Total debt due the United States as of October 1, 2020: $247,485.07

I certify that Farm Service Agency records show the debtor named above is
indebted to the United States in the amount stated above, which includes a
principal balance of $192,911.45 and an interest balance of $54,573.62.
Interest accrues on the principal amount of this debt at rate of $26.1292 per day.

The claim arose in connection with loans made by Farm Service Agency.

CERTIFICATION:   Pursuant to 28 USC 1746, I certify under penalty of perjury
that the foregoing is true and correct.

Brian J. Gossling
Chief Specialist, Farm Loan Programs

10/1/2020
Date

**Exhibit H**
**pg. 1 of 1**

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements)

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| (09-03-10) | Farm Service Agency | |

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, dated *(a)*_____August 9, 2012_____, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____

____DONALD ALAN COMER, JENNIFER LYN BURGOIN COMER_____

(Debtor), whose mailing address is (c)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

NOW THEREFORE, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

DEBTOR GRANTS to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial  DAC    Date 8-22-12

X    8/22/12

COPY

**Exhibit I**
pg. 1 of 7

FSA-2028 (09-03-10)

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Donald Comer | 80 | TAYLOR, IA | 2 miles NE of Siam |
| Merrill Webb | 220 | TAYLOR, IA | W edge of New Market |
| Merrill Webb | 80 | TAYLOR, IA | 3 miles NE of New Market |
| Dave Madison  Not 2013 | 160 | TAYLOR, IA | 1/2 mile N of Siam |
| Ronald Holland | 120 | TAYLOR, IA | 2 miles N of Gravity |
| Ronald Holland | 80 | TAYLOR, IA | 3 miles E of Siam |
| Ronald Holland | 120 | TAYLOR, IA | 2.5 miles NE Siam |
| Ronald Holland | 513 | TAYLOR, IA | 1.5 miles NE of Siam |
| Ronald Holland | 238 | TAYLOR, IA | 2.5 miles NW of Bedford |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Dale Thomas                                                         115

Initial DAC     Date 8-22-12
    &           8.22-12

**Exhibit I**
**pg. 2 of 7**

FSA-2028 (09-03-10)                                                                                    Page 3 of 7

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of (1) ___Iowa___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | JD | 2950 | Good | | |
| 2 | 1 | Tractor* | JD | 4450 MFWD | Good | 1988 | 28305 |
| 3 | 1 | Combine* | JD | 9500 Sidehill | Good | 1992 | 647290 |
| 4 | 1 | Cornhead | JD | 693 | Good | | |
| 5 | 1 | Grain Head* | JD | 920F | Good | 2000 | 685729 |
| 6 | 1 | Head Trailer* | Hull | 25' | Good | 2011 | |
| 7 | 1 | Planter* | JD | 7200 12-row | Good | | |
| 8 | 1 | Utility Trailer | H & H | 6x12 | Good | | |
| 9 | 1 | Grain Cart | Brent | #572 | Good | 2002 | B20970100 |
| 10 | 1 | Loader | Westendorf | TA45 | Good | | |
| 11 | 1 | Feed Wagon | Shuler | 255 | Good | | |
| 12 | 1 | Grinder | OMC | | Good | | |
| 13 | 2 | Bulk Bins | | | | | |
| 14 | 1 | Fuel Barrel | | 1000 gal | Good | | |
| 15 | 1 | Grain Auger | | 12"x72' | Good | | |
| 16 | | *PMSI | | | | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial DAC    Date 8-22-12
                    9-22-12

**Exhibit I**
**pg. 3 of 7**

FSA-2028 (09-03-10)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)* ___Iowa___ :

| (2)<br>Line<br>No. | (3)<br>Quantity | (4)<br>Kind or Sex | (5)<br>Breed | (6)<br>Color | (7)<br>Weight | (8)<br>Age | (9)<br>Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 3 | Cattle - Beef - Beef Bulls-Cull | AngSim | Black | | 4-8 | 1800# |
| 2 | 17 | Cattle - Beef - Beef Cows-Cull | Angus Cross | Black/Red | | 10 | 1200# |
| 3 | 67 | Cattle - Beef - Breeding Heifers - 1st lien to SSB | Angus Cross | Black | | | 900# |
| 4 | 64 | Cattle - Beef - Calves | Angus Cross | Black | | | 400# |
| 5 | 4 | Cattle - Brdg. - Bulls | 2Ang2Sim | Black | | 2-6 | 2000# |
| 6 | 128 | Cattle - Brdg. - Cows - 1st lien 26 hd to SSB | Angus Cross | Black/Red | | 4-10 | 1350# |

Initial DAC   Date 8-22-12
X   8-22-12

Exhibit I<br>pg. 4 of 7

FSA-2028 (09-03-10)                                                                                    Page 5 of 7

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title,
     payment intangibles, and general intangibles, including but not limited to the following:

(a) All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit
accounts, supporting obligations, payment intangibles, general intangibles, investment property, crop insurance, indemnity
payments, and all entitlements, benefits and payments from all state and federal farm programs;
(b) All proceeds, products, accessions, and security acquired hereafter;
The security interest perfected secures a future advance clause and the security agreement contains an after acquired
property clause.
Disposition of such collateral is not hereby authorized.

10/11/12 Feeder letter 661 570 purchase 78 hd feeder cattle due 1/10/13.

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe
     livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral
     is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other
     interests in favor of Secured Party which shall remain in full force and effect; (2) any applicable landlord's statutory liens; and
     (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm
     operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as
     stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will (1) use the loan
     funds for the purposes for which they were or are advanced; (2) comply with such farm operating plans as may be agreed upon
     from time to time by Debtor and Secured Party; (3) care for and maintain collateral in a good and husbandlike manner; (4)
     insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured
     Party, at its option, may procure such insurance; (5) permit Secured Party to inspect the collateral at any reasonable time; (6)
     not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or
     permit others to do so, without the prior written consent of Secured Party; (7) not permit the collateral to be levied upon,
     injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock
     covered by this Security Agreement; and (8) maintain accurate records of the collateral, furnish Secured Party any requested
     information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all (1) indebtedness evidenced by the Note and any indebtedness to Secured Party secured
     by this Security Agreement; (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and
     costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the
     collateral or this security interest; (3) filing or recording fees for instruments necessary to perfect, continue, service, or
     terminate this security interest; and (4) fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements
     and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in
     Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may
     affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due,
     including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for
     the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by
     Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party
     shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any
     indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further
     documents, including additional security instruments on such real and personal property as Secured Party may require and to
     take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to
     effectuate the rights granted to Secured Party herein.

Initial DAC     Date 8-22-12

        B. 22-12

**Exhibit I**
**pg. 5 of 7**

**FSA-2028** (09-03-10)

### 4. IT IS FURTHER AGREED THAT:

(a)  Until default, Debtor may retain possession of the collateral.

(b)  Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1)  Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2)  Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3)  A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)  Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly WAIVES the benefit of any such State laws.

(f)  Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)  This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)  If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial **$BDAC$**   Date $8-22$

$JE$   $8.22-12$

**Exhibit I**
**pg. 6 of 7**

FSA-2028 (09-03-10)

   (i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

   (j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

   (k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

   (l)  SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. DONALD ALAN COMER
JENNIFER LYN BURGOIN COMER

6B. (Date) 8-22-12
(Date) 8-22-12

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to; a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).

To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Exhibit I
pg. 7 of 7

This form is available electronically.

Form Approved – OMB No. 0560-0238
(S___ ___ge 7 for Privacy Act and Public Burden Statements).

FSA-2028
(09-03-10)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 1

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** dated *(a)*___**February 21, 2013**___ , is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*___

___**DONALD ALAN COMER, JENNIFER LYN BURGOIN COMER**___

(Debtor), whose mailing address is (c)

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial DAC   Date 2-21-13
JLC   2-21-13

**Exhibit J**
**pg. 1 of 8**

FSA-2028 (09-03-86)

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Donald Comer | 80 | TAYLOR, IA | 2 miles NE of Siam |
| Dale Thomas | 115 | PAGE, IA | 3 miles SW of Siam |
| Merrill Webb | 220 | TAYLOR, IA | W edge of New Market |
| Merrill Webb | 80 | TAYLOR, IA | 3 miles NE of New Market |
| Ronald Holland | 80 | TAYLOR, IA | 3 miles E of Siam |
| Ronald Holland | 120 | TAYLOR, IA | 2.5 miles NE Siam |
| Ronald Holland | 513 | TAYLOR, IA | 1.5 miles NE of Siam |
| Ronald Holland | 238 | TAYLOR, IA | 2.5 miles NW of Bedford |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial DAC    Date 2-21-13
      JC         2-21-13

**Exhibit J
pg. 2 of 8**

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*___Iowa___ :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | JD | 2950 | Good | | |
| 2 | 1 | Tractor* | JD | 4450 MFWD | Good | 1988 | 28305 |
| 3 | 1 | Combine* | JD | 9500 Sidehill | Good | 1992 | 647290 |
| 4 | 1 | Cornhead | JD | 693 | Good | | |
| 5 | 1 | Grain Head* | JD | 920F | Good | 2000 | 685729 |
| 6 | 1 | Head Trailer* | Hull | 25' | Good | 2011 | |
| 7 | 1 | Planter* | JD | 7200 12-row | Good | | |
| 8 | 1 | Utility Trailer | H & H | 6x12 | Good | | |
| 9 | 1 | Grain Cart | Brent | #572 | Good | 2002 | B20970100 |
| 10 | 1 | Loader | Westendorf | TA45 | Good | | |
| 11 | 1 | Feed Wagon | Shuler | 255 | Good | | |
| 12 | 1 | Grinder | OMC | | Good | | |
| 13 | 2 | Bulk Bins | | | | | |
| 14 | 1 | Fuel Barrel | | 1000 gal | Good | | |
| 15 | 1 | Grain Auger | | 12"x72' | Good | | |
| 16 | | *PMSI | | | | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*    Iowa    :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 12 | Cattle - Beef - Beef Cows-Cull | Angus Cross | Black/Red | 1,350 | 4-8 | |
| 2 | 2 | Cattle - Beef - Breeding Bulls - FSA *PMSI to be purchased | Angus Cross | Black | 1,800 | 1-3 | |
| 3 | 63 | Cattle - Beef - Breeding Cows - Fall | Angus Cross | Black/Red | 1,350 | 4-8 | |
| 4 | 50 | Cattle - Beef - Breeding Cows - FSA *PMSI To purchase | Angus Cross | Black | 1,350 | | |
| 5 | 4 | Cattle - Beef - Breeding Heifers | Angus Cross | Black | | 1 | |
| 6 | 64 | Cattle - Beef - Breeding Heifers | Angus Cross | Black/Red | 1,050 | 2 | |
| 7 | 12 | Cattle - Beef - Calves - Feeders | Angus Cross | Black/Red | 700 | | |
| 8 | 31 | Cattle - Beef - Calves - Steers | Angus Cross | Black/Red | 775 | | |
| 9 | 28 | Cattle - Beef - Calves | Angus Cross | Black/Red | 500 | | |
| 10 | 15 | Cattle - Beef - Calves | Angus Cross | Black/Red | 400 | | |
| 11 | 54 | Cattle - Beef - Calves - Fall calves | Angus Cross | Black/Red | 275 | | |
| 12 | 36 | Cattle - Beef - Calves - Feeders | Angus Cross | Black/Red | 625 | | |
| 13 | 23 | Cattle - Beef - Calves - Replacement heifers | Angus Cross | Black/Red | 700 | | |
| 14 | 6 | Cattle - Brdg. - Bulls | Angus Cross | Black/Red | 2,000 | 1-4 | |
| 15 | 58 | Cattle - Brdg. - Cows - Spring | Angus Cross | Black/Red | 1,350 | 4-8 | |

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

(A) All crops, livestock, farm products, equipment, certificates of title goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment

   property, crop insurance indemnity payments, and all entitlements, benefits, and payments from all state and federal farm programs;

(B)  All proceeds, products, accessions, and security acquired hereafter.

The security interest perfected secures a future advance clause and the security agreement contains an after-acqui property clause.
Disposition of such collateral is not hereby authorized.
3. **DEBTOR WARRANTS, COVENANTS, AND AGREES THAT :**

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to

Initial DAC    Date 2-21-13

JLC    2-21-13

**Exhibit J**
**pg. 5 of 8**

effectuate the rights granted to Secu___ ⅃ Party herein.

Initial _____    Date 2-21-13
JCC          2-21-13

**Exhibit J
pg. 6 of 8**

**4. IT IS FURTHER AGREED THAT :**

(a)   Until default, Debtor may retain possession of the collateral.

(b)   **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

(1)   Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

(2)   Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

(3)   A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c)   Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d)   It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e)   Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f)   Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g)   This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h)   If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i)   The rights and privileges of Secu...    Party under this Security Agreement shall acc...    to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)   If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)   Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)   **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW .**

## 5.   CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _____    6B. (Date) 2-21-13

DONALD ALAN COMER

_____    (Date) 2-21-13

JENNIFER LYN BURGOIN COMER

---

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.***

---

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements).

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
| (09-03-10) | Farm Service Agency | |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, dated *(a)*____**August 1, 2013**_____, is made between the United States of America, acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and *(b)*_____

___**DONALD ALAN COMER, JENNIFER LYN BURGOIN COMER**_____

(Debtor), whose mailing address is (c)_____

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial DAC    Date 2-25-14

**Exhibit K
pg. 1 of 7**

**FSA-2028** (09-03-10)

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and Direction<br>from Named Town or Other<br>Description |
|---|---|---|---|
| Donald Comer | 80 | TAYLOR, IA | 2 miles NE of Siam |
| Merrill Webb | 80 | TAYLOR, IA | NE of New Market |
| Merrill Webb | 220 | TAYLOR, IA | W edge of New Market |
| Dale Thomas | 115 | PAGE, IA | 3 mi SW Siam |
| Ronald Holland Trust | 80 | TAYLOR, IA | 3 mi E Siam |
| Ronald Holland | 238 | TAYLOR, IA | 2.5 miles NW of Bedford |
| Ronald Holland | 120 | TAYLOR, IA | 2.5 miles NE Siam |
| Ronald Holland | 513 | TAYLOR, IA | 1.5 miles NE of Siam |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial DAC_____  Date 2-25-14

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*    Iowa    :

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor | JD | 2950 | Good | | L02950T558613 |
| 2 | 1 | Tractor | JD | 4450 FWA | Good | | RW4450P028305 |
| 3 | 1 | Grain Cart | Brent | #572 | Good | 2002 | |
| 4 | 1 | Cornhead | JD | 693 | Good | | |
| 5 | 1 | Combine | JD | 9500 Sidehill | Good | | HO9500X647290 |
| 6 | 1 | Grain Head | JD | 920F | Good | | |
| 7 | 1 | Head Trailer | | | Good | | |
| 8 | 2 | Bulk Bins | | | | | |
| 9 | 1 | Calviing Pen | Stroberg | 10 x 10 | Good | | |
| 10 | 1 | Feed Wagon | Shuler | 255 | Good | | |
| 11 | 1 | Fuel Barrel | | 1000 gal. | Good | | |
| 12 | 1 | Grain Auger | | 12"x72' | Good | | |
| 13 | 1 | Grinder | OMC | | Good | | |
| 14 | 1 | Loader | Westendorf | TA45 | Good | | |
| 15 | 1 | Planter | JD | 7200, 12 row | Good | | |
| 16 | 1 | Utility Trailer | H & H | 6x12 | Good | | |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial DaC       Date 2-25-14

**FSA-2028** (09-03-10)

(d)  All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals,
     other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter
     acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited
     to the following located in the State(s) of *(1)* ___Iowa___ :

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | ~~116~~ _170_ | Cattle - Beef - Breeding Cows | Crossbred | | 1,050 | 3-12 | *6 FSA PMSI |
| 2 | ~~64~~ _52_ | Cattle - Beef - Breeding Heifers - Bred | Crossbred | | 1,050 | 2 yr | |
| 3 | _72_ | Cattle - Beef - Calves - Spring Calves | | | 375 | | |
| 4 | 32 | Cattle - Beef - Calves - Fall Calves | | | 100 | | |
| 5 | 6 | Cattle - Brdg. - Bulls | 4 Angus, 2 Simm/Angus | | | 3-4 y | *2 FSA PMSI |

Initial **DJC**    Date **2-25-14**

**Exhibit K**
**pg. 4 of 7**

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

(A) All crops, livestock, farm products, equipment, certificates of title goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment
     property, crop insurance indemnity payments, and all entitlements, benefits, and payments from all
     state and federal farm programs;
(B) All proceeds, products, accessions, and security acquired hereafter.
The security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clause.
Disposition of such collateral is not hereby authorized.

### 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT :

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial DRC        Date 2-25-1 9

**FSA-2028** (09-03-10)

4. **IT IS FURTHER AGREED THAT :**

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

(1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

(2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

(3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial ___  Date 2·25-14

FSA-2028 (09-03-10)

(i)  The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW .**

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A.  _____
DONALD ALAN COMER

6B.  *(Date)* 2 05 14

_____
*JENNIFER LYN BURGOIN COMER*

*(Date)* _____

---

NOTE:  *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

**Exhibit K
pg. 7 of 7**

████████████
████████████
████████████

E753938

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**FILED
SECRETARY OF STATE
IOWA**

**2006-05-12 08:17**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

FARM SERVICE AGENCY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name - do not abbreviate or combine names

| | ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | INDIVIDUALS LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | Comer | | Donald | | Alan | |
| | MAILING ADDRESS | | CITY | | STATE ████ | POSTAL CODE ████ | COUNTRY USA |
| | TAX ID# SSN OR EIN | ADDL INFO RE ORGANIZATION DEBTOR | TYPE OF ORGANIZATION | JURISDICTION OF ORGANIZATION | ORGANIZATIONAL ID # if any | |

ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name - do not abbreviate or combine names

| | ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | INDIVIDUALS LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | Comer | | Jennifer | | Lyn | |
| | MAILING ADDRESS ████ | | CITY ████ | | STATE ████ | POSTAL CODE ████ | COUNTRY USA |
| | TAX ID# SSN OR EIN ████ | ADDL INFO RE ORGANIZATION DEBTOR | TYPE OF ORGANIZATION | JURISDICTION OF ORGANIZATION | ORGANIZATIONAL ID # if any | |

SECURED PARTY'S NAME (or NAME OF TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name

| | ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| | United States Of America-Farm Service Agency | | | | | |
| OR | INDIVIDUALS LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| | MAILING ADDRESS 1001 South 8th Street | | CITY Clarinda | | STATE IA | POSTAL CODE 51632 | COUNTRY USA |

This FINANCING STATEMENT covers the following collateral:

(a) all crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment property, crop insurance, indemnity payments, and all entitlements, benefits, and payments from all state and federal farm programs and (b) all proceeds, products, accessions, and security acquired hereafter. The security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clause. Disposition of such collateral is not hereby authorized.

| ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum | Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] | Alt Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

OPTIONAL FILER REFERENCE DATA

MISCELLANEOUS

| This FINANCING STATEMENT covers | timber to be cut or | as extracted collateral, or is filed as a | fixture filing. | Check only if applicable and check only one box. Debtor is a | Trust or | Trustee acting with respect to property held in trust or | Decedent's Estate |
|---|---|---|---|---|---|---|---|

Description of real estate:

Check only if applicable and check only one box.
- Debtor is a TRANSMITTING UTILITY
- Filed in connection with a Manufactured Home Transaction -- effective 30 years
- Filed in connection with a Public-Finance Transasction -- effective 30 years

Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**Exhibit L
pg. 1 of 5**

E759203

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**FILED**
**SECRETARY OF STATE**
**IOWA**

**2006-06-06 15:29**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

FARM SERVICE AGENCY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

INITIAL FINANCING STATEMENT FILE #
e753938

This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ ASSIGNMENT (full or partial): Give name and address of assignee in section below.

AMENDMENT (PARTY INFORMATION): This Amendment affects ☒ Debtor or ☐ Secured Party of record. Check only one of these two boxes

Also check one of the following boxes and provide appropriate information in section below.

| ☒ CHANGE name and/or address: Give current record name, new name (if name change), and/or new address (if address change) in sections below. | ☐ DELETE name: Give record name to be deleted in section below. | ☐ ADD name: Complete Name, and also Address section below; also complete, Tax ID, Type Of Org., Juris., and Org. ID (if applicable). |

CURRENT RECORD INFORMATION
ORGANIZATION'S NAME

OR

| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Comer | Jennifer | Lyn | |

CHANGED (NEW) OR ADDED INFORMATION
ORGANIZATION'S NAME

OR

| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Burgoin-Comer | Jennifer | Lyn | |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | USA |

| TAX ID# SSN OR EIN | ADDL INFO RE ORGANIZATION DEBTOR | TYPE OF ORGANIZATION | JURISDICTION OF ORGANIZATION | ORGANIZATIONAL ID # if any |
|---|---|---|---|---|
| | | | | |

AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment. If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

ORGANIZATION'S NAME
United States Of America-Farm Service Agency

OR

| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

OPTIONAL FILER REFERENCE DATA

Use this space for additional information

**Exhibit L**
**pg. 2 of 5**

▬▬▬▬▬▬
▬▬▬▬▬▬
▬▬▬▬▬▬
▬▬▬▬▬▬

**E10072547-9**

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**FILED
SECRETARY OF STATE
IOWA**

**2010-11-29 11:01**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

FARM SERVICE AGENCY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

INITIAL FINANCING STATEMENT FILE #
E753938

This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ ASSIGNMENT (full or partial): Give name and address of assignee in section below.

AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes

Also check one of the following boxes and provide appropriate information in section below.

☒ CHANGE name and/or address: Give current record name, new name (if name change), and/or new address (if address change) in sections below.

☐ DELETE name: Give record name to be deleted in section below.

☐ ADD name: Complete Name, and also Address section below; also complete, Tax ID, Type Of Org., Juris., and Org. ID (if applicable).

CURRENT RECORD INFORMATION

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Farm Service Agency | | | |
| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

CHANGED (NEW) OR ADDED INFORMATION

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| TAX ID# SSN OR EIN | ADDL INFO RE ORGANIZATION DEBTOR | TYPE OF ORGANIZATION | JURISDICTION OF ORGANIZATION | ORGANIZATIONAL ID # if any |

CHANGED (NEW) OR ADDED INFORMATION

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States Of America-Farm Service Agency | | | |
| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 326 | Creston | IA | 50801 | USA |

AMENDMENT (COLLATERAL CHANGE): check only one box.

☐ Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States Of America-Farm Service Agency | | | |
| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

OPTIONAL FILER REFERENCE DATA

Use this space for additional information

**Exhibit L
pg. 3 of 5**

E10072548-6

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**FILED**
**SECRETARY OF STATE**
**IOWA**

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

FARM SERVICE AGENCY

**2010-11-29 11:03**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

INITIAL FINANCING STATEMENT FILE #
E753938

This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

[ ] TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

[X] CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

[ ] ASSIGNMENT (full or partial): Give name and address of assignee in section below.

AMENDMENT (PARTY INFORMATION): This Amendment affects [ ] Debtor _or_ [ ] Secured Party of record. Check only _one_ of these two boxes

Also check _one_ of the following boxes and provide appropriate information in section below.

[ ] CHANGE name and/or address: Give current record name, new name (if name change), and/or new address (if address change) in sections below.
[ ] DELETE name: Give record name to be deleted in section below.
[ ] ADD name: Complete Name, and also Address section below; also complete, Tax ID, Type Of Org., Juris., and Org. ID (if applicable).

CHANGED (NEW) OR ADDED INFORMATION

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| TAX ID# SSN OR EIN | ADDL INFO RE ORGANIZATION DEBTOR | TYPE OF ORGANIZATION | JURISDICTION OF ORGANIZATION | ORGANIZATIONAL ID # if any |

AMENDMENT (COLLATERAL CHANGE): check only _one_ box.

[ ] Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

NAME OF **SECURED PARTY** OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| ORGANIZATION'S NAME | | | |
|---|---|---|---|
| United States Of America-Farm Service Agency | | | |
| INDIVIDUALS LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

OPTIONAL FILER REFERENCE DATA

Use this space for additional information

**Exhibit L**
**pg. 4 of 5**

▬▬▬▬▬▬
▬▬▬▬▬▬
▬▬▬▬▬▬
▬▬▬▬▬▬

E16001090-9

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**FILED**
**SECRETARY OF STATE**
**IOWA**

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

**2016-01-06 13:57**

C. SEND ACKNOWLEDGEMENT TO: (Name and Address)

FARM SERVICE AGENCY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| INITIAL FINANCING STATEMENT FILE NUMBER |  |
|---|---|
| E753938 | ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement.

☐ ASSIGNMENT (full or partial): Provide name and address of Assignee and name of Assignor in sections below.

☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

☐ PARTY INFORMATION CHANGE:

Check one of these two boxes: This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Give current record name, new name (if name change), and/or new address (if address change) in sections below. | ☐ ADD name: Complete Name, and also Address section below. | ☐ DELETE name: Give record name to be deleted in section below.

COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

NAME OF **SECURED PARTY** OF **RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (name of Assignor, if this is an Assignment). If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | United States Of America-Farm Service Agency | | |
| | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |

OPTIONAL FILER REFERENCE DATA

Continuation on Donald Alan Comer and Jenniifer L. Burgoin-Comer

Use this space for additional information

**Exhibit L**
**pg. 5 of 5**



**110 W. Fourth Street**
**Spencer, IA 51301**

**Phone: 712-262-7007**
**Fax:    712-264-3038**
**Email: hostwald@smunet.net**

**IOWA MEDIATION SERVICE**

Farmer/creditor mediation (Code of Iowa, Section 654A.11)        Case # 1-073014B

## MANDATORY MEDIATION RELEASE

This certification constitutes a release for the below-listed requesting parties to initiate a proceeding to enforce a debt against agricultural property, which is real estate under Chapter 654, to forfeit a contract to purchase agricultural property under Chapter 656, to enforce a secured interest in agricultural property under Chapter 554, or to otherwise garnish, levy on, execute on, seize, or attach agricultural property.

This release certifies that:

( X )    a mediation session was not held because the borrowers failed to participate as prescribed by the rules established under Iowa Law (Chapter 654).

(   )    a mediation session was held and the parties listed below participated as required by Iowa Law (Chapter 654)

(   )    the borrower waived his/her rights to mediation by executing a signed Waiver of Mediation form.

IMS Staff Signature - Hank Ostwald              Date:  August 7, 2014

Requesting Party:        USDA, Farm Service Agency
                         1201 East South Street
                         Mount Ayr, IA  50854

Responding Party:        Donald Comer
                         Jennifer Burgoin-Comer

Loan Number(s):          41-02, 30-07, 44-08, 44-09, 44-10

**Exhibit M**
**pg. 1 of 2**



**110 West Fourth St.**
**Spencer, IA 51301**

**Phone: 712-262-7007**

**Fax:  712-264-3038**

**Email: hostwald@smunet.net**

**IOWA MEDIATION SERVICE**

DATE:                    August 7, 2014

TO:                      Donald Comer & Jennifer Burgoin-Comer

                         USDA, Farm Service Agency – Rhonda Triggs

FROM:                    Iowa Mediation Service

RE:                      Case No:  1-073014B

Responding Party:        Donald Comer and Jennifer Burgoin-Comer

Requesting Party:        USDA, Farm Service Agency

This mediation case has been closed for the following reason:

A mediation session was not held because the borrower(s) failed to participate as prescribed by the rules established under Iowa Law (Chapter 654).  A release has been issued.

**Exhibit M**
**pg. 2 of 2**



**USDA**

United States Department of Agriculture

5-FLP, Exhibit 49

NOTICE OF ACCELERATION OF FARM LOAN PROGRAMS ACCOUNTS SECURED BY
REAL ESTATE AND/OR CHATTELS IN CASES NOT INVOLVING BANKRUPTCY

CERTIFIED MAIL

7015 0640 0000 2552 5451

July 20, 2015

Donald Alan Comer
Jennifer Lyn Burgoin Comer

Subject:  NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE
AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT

Dear Donald and Jennifer:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption
agreements which evidence the loans received by you from the United States of America, acting
through the Farm Service Agency, United States Department of Agriculture is now declared
immediately due and payable.  They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 5, 2006 | $150,000.00 |
| Promissory Note | March 28, 2011 | $ 60,000.00 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of
trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| Real Estate Mortgage | 6/5/2006 | Taylor County Recorder | Book 155/Page 695 |
| Real Estate Mortgage | 2/8/2011 | Taylor County Recorder | Book 168/Page 689 |
| Real Estate Mortgage | 3/28/2011 | Taylor County Recorder | Book 168/Page 903 |
| Real Estate Mortgage | 2/21/2013 | Taylor County Recorder | Book 174/Page 191 |
| Financing Statement | 5/12/2006 | Iowa Secretary of State | E753938 |
| Security Agreement | 8/1/2013 | FSA Office, Mount Ayr, IA 50854 | |

Farm Service Agency
1201 E South Street, Mount Ayr, Iowa 50854
Phone: (641) 464-2251    Fax: (866) 550-0689
USDA is an equal opportunity provider and employer

**Exhibit N**
**pg. 1 of 3**

5-FLP, Exhibit 49

This acceleration of your indebtedness is made in accordance with the authority granted in the above described instruments.

The reasons for the acceleration of your indebtedness are as follows:

The indebtedness due is $192,911.45 unpaid principal, and $21,206.87 unpaid interest, as of July 20, 2015, plus additional interest accruing at the rate of $26.1292 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation. Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A)    CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at 1201 E. South Street, Mount Ayr, Iowa. If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B)    TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C)    SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

5-FLP, Exhibit 49

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE
YOUR FSA DEBTS.

UNITED STATES OF AMERICA
BY: _____
District Director
Farm Service Agency
United States Department of Agriculture

Notice to Customers Presenting Checks
When you provide a check as payment, you authorize us either to use information from your
check to make a one-time electronic fund transfer from your account or to process the payment
as a check transaction. For inquires, please contact your local office.

Privacy Act -- A privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority
for soliciting and collecting the information from your check, and explaining the purposes and
routine uses which will be made of your check information, is available from our internet site at
(http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a
copy by mail. Furnishing the check information is voluntary, but a decision not to do so may
require you to make payment by some other method.

| Form 668 (Y)(c) (Rev. February 2004) | 11953 | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** |
|---|---|---|

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #4 Lien Unit Phone: (800) 829-3903 | Serial Number 3516 | For Optional Use by Recording Office |
|---|---|---|

**As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

Name of Taxpayer DONALD COMER & J L BURGOIN-COMER

Residence

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | XXX-XX-8672 | 11/16/2015 | 12/16/2025 | 102242.79 |

Document 17100
Book 6 Page 532 Type 08 014 Pages 1
Date 7/25/2016  Time 1:10PM
Rec Amt $7.00

RICK SHELEY, RECORDER
TAYLOR COUNTY IOWA

| Place of Filing | Taylor County Recorder Taylor Courthouse Bedford, IA 50833 | Total | $ | 102242.79 |
|---|---|---|---|---|

This notice was prepared and signed at _____ CHICAGO, IL _____ , on this,

the ___14th___ day of ___July___ , ___2016___ .

| Signature *Cheryl Cordero* for G.J. CARTER-LOUIS | Title ACS SBSE (800) 829-3903 | 0008 |
|---|---|---|

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - Kept By Recording Office**

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

**Exhibit O**
**pg. 1 of 1**

Number:   17406
BK:     6 PG:   541
Recorded: 10/25/2016 at 8:34:15.0 AM
Fee Amount: $7.00
Revenue Tax:
**RICK SHELEY, RECORDER**
Taylor County, Iowa

| State of Iowa Polk County | SS | IOWA DEPARTMENT OF REVENUE NOTICE OF TAX LIEN | RESERVED FOR RECORDER |
|---|---|---|---|
| **Preparer Information** Courtney M. Kay-Decker, Director Hoover Bldg. Des Moines, IA 50319 (515) 281-5063 | | | **After Recording Return To:** Iowa Department of Revenue Hoover State Office Building PO Box 10471 Des Moines, IA 50306-0471 |
| **Taxpayer Address** | | | |

COMER,DONALD

SSN1: XXX-XX-8672
SSN2:
SSN3:
FEIN:

Notice Date: October 24, 2016 County: TAYLOR

| Account Number | Notice of Lien for | Date Assessed | Reason for Assessment | Amount Assessed |
|---|---|---|---|---|
| 7003-01 | Individual Income Tax | December 23, 2015 | Return was received without payment. | $34,962.82 |

**Total Amount Due: $34,962.82**



7

ACCOUNT NUMBER

Courtney M. Kay-Decker, Director, Iowa Department of Revenue

ELIENFRM

**Exhibit P
pg. 1 of 6**

**Number:   18849**
**BK:     6 PG:   561**
**Recorded: 1/23/2018 at 8:01:46.0 AM**
**Fee Amount: $7.00**
**Revenue Tax:**
**RICK SHELEY, RECORDER**
**Taylor County, Iowa**

| State of Iowa<br>Polk County | SS | **IOWA DEPARTMENT OF REVENUE**<br>**NOTICE OF TAX LIEN** | RESERVED FOR RECORDER |
|---|---|---|---|
| **Preparer Information**<br>Courtney M. Kay-Decker,<br>Director<br>Hoover Bldg.<br>Des Moines, IA 50319<br>(515) 281-3114<br><br>**Taxpayer Address** | | | **After Recording Return To:**<br>Iowa Department of Revenue<br>Hoover State Office Building<br>PO Box 10471<br>Des Moines, IA 50306-0471 |

COMER,DONALD

SSN1: XXX-XX-8672
SSN2:
SSN3:
FEIN:



Notice Date: January 22, 2018 County: TAYLOR

| Period Date | Notice of Lien for | Date Assessed | Reason for Assessment | Amount<br>Assessed |
|---|---|---|---|---|
| 12/31/2014 | Individual Income Tax | November 21, 2017 | Deductions reduced to accepted amounts. | $6,573.11 |

**Total Amount Due: $6,573.11**



ACCOUNT NUMBER

Courtney M. Kay-Decker, Director of Iowa Department of Revenue

ELIENFMS

**Number:   19523**
**BK:      6 PG:   571**
**Recorded: 11/9/2018 at 7:52:03.0 AM**
**County Recording Fee: $7.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $10.00**
**Revenue Tax:**
**RICK SHELEY, RECORDER**
**Taylor County, Iowa**

| State of Iowa<br>Polk County | SS | **IOWA DEPARTMENT OF REVENUE**<br>**NOTICE OF TAX LIEN** | RESERVED FOR RECORDER |
|---|---|---|---|
| **Preparer Information**<br>Courtney M. Kay-Decker,<br>Director<br>Hoover Bldg.<br>Des Moines, IA 50319<br>(515) 281-3114<br><br>**Taxpayer Address** | | | **After Recording Return To:**<br>Iowa Department of Revenue<br>Hoover State Office Building<br>PO Box 10471<br>Des Moines, IA 50306-0471 |

COMER,DONALD

SSN1: XXX-XX-8672
SSN2:
SSN3:
FEIN:



Notice Date: November 08, 2018 County: TAYLOR

| Period Date | Notice of Lien for | Date Assessed | Reason for Assessment | Amount<br>Assessed |
|---|---|---|---|---|
| 12/31/2014 | Individual Income Tax | December 23, 2015 | Return was received without payment. | $34,996.18 |

**Total Amount Due: $34,996.18**

7

ACCOUNT NUMBER



_Courtney Kay Decker_
Courtney M. Kay-Decker, Director of Iowa Department of Revenue

**Number:   19524**
**BK:     6 PG:   572**
**Recorded: 11/9/2018 at 7:52:05.0 AM**
**County Recording Fee: $7.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $10.00**
**Revenue Tax:**
**RICK SHELEY, RECORDER**
**Taylor County, Iowa**

| State of Iowa<br>Polk County | SS | **IOWA DEPARTMENT OF REVENUE**<br>**NOTICE OF TAX LIEN** | RESERVED FOR RECORDER |
|---|---|---|---|
| **Preparer Information**<br>Courtney M. Kay-Decker,<br>Director<br>Hoover Bldg.<br>Des Moines, IA 50319<br>(515) 281-3114<br><br>**Taxpayer Address** | | | **After Recording Return To:**<br>Iowa Department of Revenue<br>Hoover State Office Building<br>PO Box 10471<br>Des Moines, IA 50306-0471 |

COMER,DONALD

SSN1: XXX-XX-8672
SSN2:
SSN3:
FEIN:



Notice Date: November 08, 2018 County: TAYLOR

| Period Date | Notice of Lien for | Date Assessed | Reason for Assessment | Amount<br>Assessed |
|---|---|---|---|---|
| 12/31/2017 | Individual Income Tax | November 07, 2018 | Return was received without payment. | $1,293.90 |

**Total Amount Due: $1,293.90**

7

ACCOUNT NUMBER



Courtney M. Kay-Decker, Director of Iowa Department of Revenue

**Number:   19704**
**BK:     6 PG:    582**
**Recorded: 12/18/2018 at 11:45:45.0 AM**
**County Recording Fee: $7.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $10.00**
**Revenue Tax:**
**RICK SHELEY, RECORDER**
**Taylor County, Iowa**

| State of Iowa<br>Polk County | SS | **IOWA DEPARTMENT OF REVENUE**<br>**NOTICE OF TAX LIEN** | RESERVED FOR RECORDER |
|---|---|---|---|
| **Preparer Information**<br>Courtney M. Kay-Decker,<br>Director<br>Hoover Bldg.<br>Des Moines, IA 50319<br>(515) 281-3114 | | | **After Recording Return To:**<br>Iowa Department of Revenue<br>Hoover State Office Building<br>PO Box 10471<br>Des Moines, IA 50306-0471 |
| **Taxpayer Address** | | | |

COMER,DONALD

SSN1: XXX-XX-8672
SSN2:
SSN3:
FEIN:

Notice Date: December 17, 2018 County: TAYLOR

| Period Date | Notice of Lien for | Date Assessed | Reason for Assessment | Amount<br>Assessed |
|---|---|---|---|---|
| 12/31/2016 | Individual Income Tax | December 14, 2018 | Return was received without payment. | $1,663.45 |

**Total Amount Due: $1,663.45**



7

ACCOUNT NUMBER

Courtney M. Kay-Decker, Director of Iowa Department of Revenue

ELIENFMS

Number: 19705
BK:    6 PG:    583
**Recorded: 12/18/2018 at 11:55:17.0 AM**
**County Recording Fee: $7.00**
**Iowa E-Filing Fee: $3.00**
**Combined Fee: $10.00**
**Revenue Tax:**
**RICK SHELEY, RECORDER**
**Taylor County, Iowa**

| State of Iowa<br>Polk County | SS | **IOWA DEPARTMENT OF REVENUE**<br>**NOTICE OF TAX LIEN** | RESERVED FOR RECORDER |
|---|---|---|---|
| **Preparer Information**<br>Courtney M. Kay-Decker,<br>Director<br>Hoover Bldg.<br>Des Moines, IA 50319<br>(515) 281-3114 | | | **After Recording Return To:**<br>Iowa Department of Revenue<br>Hoover State Office Building<br>PO Box 10471<br>Des Moines, IA 50306-0471 |
| **Taxpayer Address** | | | |

BURGOIN-COMER,JENNIFER

SSN1: XXX-XX-7950
SSN2:
SSN3:
FEIN:



Notice Date: December 17, 2018 County: TAYLOR

| Period Date | Notice of Lien for | Date Assessed | Reason for Assessment | Amount<br>Assessed |
|---|---|---|---|---|
| 12/31/2016 | Individual Income Tax | December 14, 2018 | Return was received without payment. | $1,663.45 |

**Total Amount Due: $1,663.45**

7

ACCOUNT NUMBER



Courtney M. Kay-Decker, Director of Iowa Department of Revenue

ELIENFMS